**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

FLORA R. PIATTI, :
:
        Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:08-CV-0552-JOF
BANK OF AMERICA, N.A., :
:
        Defendant. :

**OPINION AND ORDER**

This matter is before the court on Defendant's first motion for summary judgment [16] and Defendant's second motion for summary judgment [20].

**I.    Background**

    **A.    Procedural History and Facts**

Plaintiff, Flora Piatti, filed suit against her employer, Defendant Bank of America, N.A., on January 14, 2008, in the State Court of Fulton County alleging counts of negligence that resulted in personal injury to her arising out of a slip and fall on water in the employee break room. Defendant removed the suit to this court on February 20, 2008.

During the relevant time period, Plaintiff worked as a senior personal banker at the Bank of America location on Douglas Boulevard in Douglasville, Georgia. On January 27, 2006, Plaintiff was working as scheduled at the branch office. Plaintiff alleges that she

slipped and fell on a clear liquid in the employee's break room that afternoon and that the fall caused her a series of injuries for which she seeks compensation.

Plaintiff testified in her deposition that she usually ate her lunch in the break room at the time she was given permission by her manager and that she would be "on call" during lunch to assist customers as needed. Plaintiff agreed in her deposition that her manager controlled her lunch time activities.

After Defendant filed its motion for summary judgment arguing that Plaintiff's claim was barred by the exclusive remedy of worker's compensation as her injury occurred during the "course of employment," Plaintiff filed an affidavit asserting new facts concerning her lunch break. In that affidavit, she testified that breaks were regularly scheduled, she did not perform work-related activities on her lunch break, she was not interrupted during lunch and would even go home to eat lunch approximately two times per week. She further testified that she would only be interrupted once every four weeks during lunch and that other than this interruption, she controlled her own lunch time activities.

Defendant filed a second motion for summary judgment on the basis that it did not have actual or constructive knowledge of the liquid spill in the break room. Attached to this motion was the affidavit of Naomi Rollins, the branch manager, who testified that she was not aware of a slippery condition in the break room on January 27, 2006, nor was she aware of anyone slipping and falling in the break room on any other occasion before that date.

2

In her response to this motion for summary judgment, Plaintiff filed a second affidavit in which she testifies that on January 27, 2006, prior to the time she slipped, four employees were sitting in the break room having lunch and sitting approximately five to six feet away from the counter holding the microwave oven. It appeared that one of the employees was about finished eating and the other three had just started their meals. It also appeared to Plaintiff that at least one of the employees was eating a hot meal that would have required the use of the microwave oven. Plaintiff stated that she had been in the break room for no more than five minutes before she slipped and fell. Because Plaintiff believes that employee lunch breaks last between fifty and sixty minutes, the employee who had been in the lunch room the longest and was finishing her meal had been there for at least fifty to sixty minutes. The court addresses the admissibility of testimony below.

### B. Contentions

In its first motion for summary judgment, Defendant argues that Plaintiff's negligence claim is barred by the exclusive remedy of Georgia Worker's Compensation law, O.C.G.A. § 34-9-11, because she sustained her injury during the "course of employment." In its second motion for summary judgment, Defendant contends that Plaintiff's negligence claim fails because she cannot show that Defendant breached its duty in a premises liability claim as there is no evidence in the record to show that Defendant had either actual or constructive knowledge of any foreign substance on the floor of the premises.

3

Plaintiff responds that her claim is not barred by Georgia's worker's compensation statute because she was on a regularly anticipated lunch break and had control over her personal actions during the course of that break. Plaintiff next avers that the water was on the floor of the break room for at least fifty minutes prior to her entering the break room and therefore Defendant had constructive knowledge of the water. Further, she contends that four other employees were using the break room at the time the liquid was on the floor.

**II.     Discussion**

    **A.     Worker's Compensation**[1]

Under Georgia law, § 34-9-11 is the "exclusive remedy for injuries sustained by an employee during the course of employment resulting from the negligence of a co-worker." *See Webster v. Dodson*, 240 Ga. App. 4, 6 (1999); *Williams v. Thomas*, 187 Ga. App. 527,

---

[1]Neither party has addressed the implications of Defendant's worker's compensation defense on this court's subject matter jurisdiction. Title 28, U.S.C. § 1445(c) provides that a "civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." *Id.* This statute "reflects a strong congressional policy that where the state court has been utilized by one of the parties in the state compensation machinery, the case should remain in the state court for its ultimate disposition." *Kay v. Home Indemnity Co.*, 337 F.2d 898, 902 (5th Cir. 1964). Because compensation cases "have little real business in a federal court," the court should not "strain to find a way to entertain workmen's compensation suits." *Id.* at 901. Removability under § 1445(c) is governed by federal law. *See Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 705 (1972) (federal law governs construction of removal statutes); *Reed v. Heil Co.*, 206 F.3d 1055 (11th Cir. 2000). The court has previously found, however, that where a plaintiff brings a complaint sounding only in negligence and Defendant raises a worker's compensation defense, the claim does not arise under § 1445 and the court is not required to remand the plaintiff's negligence claim. *See Hall v. Freeman*, Civil Action No. 07-CV-831-JOF, order dated Feb. 15, 2008, at 10-17.

4

529 (1988) (holding exclusive remedy provision of § 34-9-11 bars plaintiff from obtaining judgment against co-employee who injured him).

The court notes that Plaintiff's response to Defendant's motion for summary judgment is yet another in a troubling trend of responses that contains affidavits from a plaintiff with the sudden appearance of new facts designed to created a material dispute of fact. The court must remind the parties that the purpose of discovery in federal court is for the parties to investigate, learn, and bring forward all facts relevant to the claims and defenses of the parties. The parties may then file summary judgment motions applying the relevant law to those facts.

Here, Plaintiff appears to understand the situation in reverse. Plaintiff took no discovery in this case. While she did sit for her deposition and Defendant's attorney cross-examined her, Plaintiff's attorney did not conduct any direct examination. Then, after learning of the defense proffered by Defendant in its first motion for summary judgment, Plaintiff attaches to her response to Defendant's motion, her affidavit containing new facts contradictory to those she testified to in her deposition.

The court sets forth the contrasts below. Relevant to the characteristics of her lunch breack, Plaintiff testified in her deposition on May 8, 2008, as follows:

Q: Did you eat lunch in the break room on a regular basis?

A: Most of the time, yes.

5

*See* Piatti Depo., at 19.  She further elaborated:

> Q: What time during the day do you normally take your lunch break?
>
> A: We never have a specific lunch time because basically we were always on call in case we are needed. The manager would come in to lunch and just say, I have a customer. So, we just have to leave the lunch, eating or not, and go help a customer.
>
> Q: So, is it accurate to say you took your – you didn't have a designated lunch break time each day?
>
> A: No, sir.
>
> Q: You took your lunch time whenever it was convenient for the business?
>
> A: Yes. Whenever it was convenient for my – yeah, for the business. When they told us we could go, we could go most of the time.
>
> Q: And who told you it was okay to eat lunch?
>
> A: I don't recall. But it has to be either my manager Naomi Rollins, or my assistant manager, Theresa Spruill.
>
> Q: When you were actually able to take your lunch break, were you ever interrupted during your lunch break?
>
> A: Many times, yes sir, yeah.

6

> Q: And who would interrupt you?
>
> A: My managers. I mean either Theresa or Naomi.
>
> Q: And why would they interrupt your lunch break?
>
> A: Why? Because as she told me – because the bank needed [sic] for the business.
>
> Q: So, is it accurate to say that Naomi and Theresa kind of controlled your break activities?
>
> A: Okay. Are you talking just about me? Yes, anybody. It was the same, exactly the same, yes.
>
> Q: So, for you and the other –
>
> A: Yes. If we were needed, they would come and say, Please, I have a customer, I need you. So, you go to help.
>
> Q: And you complied with their requests if they told you –
>
> A: Yes, sir, yeah, yeah.

*See* Piatti Depo., at 43-45. This colloquy was not simply a passing reference to what happened to Plaintiff during lunch breaks. It was a thorough exploration of the details of who controlled her lunch breaks and why. Plaintiff had several opportunities to elaborate on her lunch break experience during this discussion.

7

AO 72A
(Rev.8/82)

Yet, in response to Defendant's motion for summary judgment, Plaintiff attaches her affidavit containing new and contradictory facts about the manner in which her lunch breaks were controlled or not controlled. She testified in her first affidavit that:

2. During my employ with Bank of America, N.A., employee breaks were regularly scheduled and would last for a one hour period, with the first break beginning at 10:30 a.m. and the last beginning at 3:30 p.m.

4  Starting and ending times for the breaks were documented by the employees in a log book and the starting times for breaks could begin fifteen minutes sooner or later than scheduled depending upon the needs of the business.

5. While I was on break, I would not perform work-related tasks.

6. I was not interrupted and called away from my break every day.

7. On a regular basis, I went home to eat during my break approximately two times per week.

8. During my deposition, I testified that I was often interrupted during my breaks. For purposes of clarification, "often" can be described in the following manner. While taking my break in the Bank's employee break room, I was interrupted approximately one out of every four

weeks to return to work and assist customers an estimated one to two times during that week's span but during the remaining three weeks, I would not be interrupted at all while on break.

9. Other than these interruptions, I had full control of my personal actions during my break time.

*See* First Piatti Aff.

The Eleventh Circuit has addressed this situation before in *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 73 F.2d 656 (11th Cir 1984). There, in a dispute about a construction agreement, Plaintiff had clearly stated three times in his deposition that the contract for him to purchase the building contained no conditions, and that the contract had to be approved by certain individuals. In an affidavit filed after his deposition was taken, however, the plaintiff testified that he was told approval was only a formality and that as soon as the contract was signed, he would receive a dealership for the construction company. The court agreed with the district court that the plaintiff's affidavit was a sham. *Id.* at 657. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.*

9

The court recognizes that for an affidavit to be a sham, it must do more than clarify ambiguous points in a deposition. *See generally Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). There could be discrepancies, such as variations in testimony or a failure of memory, which go to the weight of the evidence rather than a sham. *Id.* To be "sham," the affidavit testimony must clearly contradict previous testimony. *Id.* at 954 (noting that statement needs to be more than just "at odds" with previous testimony, it must be "inherently inconsistent" and "create an irreconcilable conflict."). *Id. See also Lawver v. Hillcrest Hospice, Inc.*, 2008 WL 5007189 (11th Cir. Nov. 24, 2008) (unpublished opinion) (noting that finding of "sham" affidavit should be made "sparingly" but approving district court's finding); *Allen v. Board of Public Education*, 495 F.3d 1306, 1316 (11th Cir. 2007) (same).

The court finds here that Plaintiff's first affidavit directly contradicts her deposition testimony on material points and that Plaintiff has offered no explanation for these differences. Plaintiff merely stated in her affidavit that in her mind, she defines "often" as one out of every four weeks. This explanation does not withstand any scrutiny. These are not variations in Plaintiff's recollection of the events, nor are they lapses in memory. Further, the information about Plaintiff's lunch break that she includes in her first affidavit is not "new" and Plaintiff had access to that information during her deposition.

AO 72A
(Rev.8/82)

Therefore, the court will not consider Plaintiff's affidavit in response to Defendant's motion for summary judgment. *See also Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002) (court should consider several factors in determining whether later affidavit is contradictory including: whether affiant was cross-examined during previous testimony, whether affiant had access to information at time of previous testimony or whether affidavit is based on newly discovered evidence, whether the earlier testimony reflects confusion which the affiant attempts to explain).

The court must now consider whether the circumstances of Plaintiff's lunch break put her activities within the "course of employment." Those injuries arising in the "course of employment" must be pursued through worker's compensation. If the injury did not occur in the "course of employment," the employee may pursue a negligence claim against the employer. Under Georgia law,

> [i]n a workmen's compensation claim, only those injuries arising out of and in the course of the claimant's employment are compensable. However, injuries occurring during a scheduled lunch break or rest break while the claimant is free to do as he chooses are generally not compensable. This exception applies only where the break is scheduled, and then only if the employer has in fact ceased the exercise of the right (to control the employee) and released time to the employee to follow his individual pursuits.

*Rampley v. Travelers Insurance Company*, 143 Ga. App. 612, 613 (1977) (quotations and citations omitted). Generally, the burden of proof is on the claimant to show that the injury "arose out of" and "in the course of" the employment. *Id.* "Nevertheless, if the burden is

11

to shift in any case, it certainly should shift where the employer is seeking to avoid liability through some exception to the general rules, as in the lunch break and rest break cases." *Id.* at 614. The court concluded:

> [a]ccordingly, we hold that once a claimant has introduced evidence establishing that the accident or injury occurred on the employer's premises during the regularly scheduled work day, even though the claimant was on break when it happened, it falls on the employer's shoulders to introduce evidence to show that the break was a scheduled one during which the claimant was not subject to the employer's demands or control.

*Id.*

Under Georgia law, the court applies "course of employment" as "where a scheduled rest break or lunch break is provided to employees during which the employee is free to use the time as he chooses, making it personal to him, an injury occurring during the break period arises out of an individual pursuit and not out of his employment and is not compensable." *ATC Healthcare Service, Inc. v. Adams*, 263 Ga. App. 792, 793 (2003). In *ATC*, the employee was in a three-day training class. The moderator of the class could allow a lunch break anywhere between 11:30 and noon depending on the number of questions he received. Lunch was scheduled for one hour but could be shortened, also depending on the number of questions. Participants in the training session were released for lunch and told when to return. They were not instructed as to where to go for lunch and could use their lunch break in any way they chose. The court found that the employee slipped and fell at a restaurant while on a scheduled break where she was free to use her break in any manner

12

and the employer exercised no control over her activities during that time period. Therefore, the employee was not entitled to temporary total disability benefits.

In *Miles v. Brown Transport Corp.*, 163 Ga. App. 563 (1982), when the employee was exiting the building, she was struck by a wind-blown door and fell down a set of stairs. The employee worked as a general clerk in a warehouse and could work anywhere from thirty to seventy hours per week depending on demand. She was permitted a lunch break each day and took that break at varying times depending on work load. She often did not leave the premises and would occasionally perform work-related activities on her break, although this was rare. The plaintiff was on her way out of the building to go visit her daughter in the hospital when the accident occurred. At first, the employer denied that worker's compensation would cover her claim because she was on her lunch break, but then the employer began to pay the plaintiff's medical bills and charged the cost to its worker's compensation insurance company.

The court noted that where a break was regularly scheduled and where the employee had freedom of action, then the injury did not arise "in the course of employment" even though it was within working hours and on the employer's premises. Both elements must be shown. *Id.* at 564. The court first found that the plaintiff's break was not regularly scheduled because it was dictated by workload. The court also found that she would occasionally subject herself to work-related activities during her lunch break, although she

13

AO 72A
(Rev.8/82)

had not on this occasion. Thus, the court found that the employee was not free to do as she chose during the break. For these reasons, the court granted summary judgment in favor of the employer and found that the plaintiff's negligence claim was barred.

The court finds that Plaintiff's situation here is more akin to *Miles* than *ATC*. Plaintiff testified that she did not control her lunch time activities and was "often" interrupted during her lunch break by her manager to assist a customer. Therefore, the court finds that Plaintiff's injury here occurred while she was in the "course of employment" and her negligence claim against the employer is barred by worker's compensation.[2]

The court notes that even were the court to accept the "new" facts alleged in Plaintiff's first affidavit, she would still not be able to avoid the bar of worker's compensation. In her affidavit, Plaintiff explains that all lunch breaks were "scheduled" according to when the employee arrived at work that day. But Plaintiff would still have to show she had control over her lunch time activities. Even in her second affidavit, Plaintiff admitted that she would be called to assist a customer approximately one to two times per month. In *Miles*, the court recognized that even the "rare" occasion of being called to do

---

[2]The court notes that Plaintiff argues she is being "whipsawed" because the bank told her that her claim would not be covered by worker's compensation and that is why she did not pursue that avenue of recovery. While there might be some appeal to this argument were Plaintiff not represented by counsel, the court finds that the bank's statement to its employee on this matter would not preclude full investigation by her counsel. Furthermore, as the bank notes, Plaintiff may still seek worker's compensation and argue that any statute of limitations defense should be waived by estoppel. Further, the defendant in *ATC* also gave varying views of the applicability of worker's compensation coverage.

14

"work-related" activities during lunch was sufficient to raise the exclusivity of worker's compensation.

For these reasons, the court finds that Plaintiff's claim is limited to worker's compensation and GRANTS Defendant's motion for summary judgment.

**B.     Negligence**

In the alternative, Defendant filed a motion for summary judgment arguing that Plaintiff could not succeed on her negligence claim because she could not show the employer had actual or constructive knowledge of the foreign substance on the floor of the employee break room. Plaintiff filed a second affidavit in response to Defendant's motion asserting new facts to attempt to create a dispute of fact as to whether Defendant had actual or constructive knowledge of a foreign substance on the floor of the break room. Defendant asks the court to strike paragraphs 3, 4, and 6 from Plaintiff's second affidavit because they are not based on her personal knowledge.[3]

In paragraph 3, Plaintiff asserts that one of the employees in the break room on January 27, 2006, "appeared" to be almost through eating and the other three "appeared" to be starting their meal. *See* Second Piatti Aff., ¶ 3. She further stated that more than one of the employees "appeared" to be eating a hot meal "which would have required them to use

---

[3]The court notes that Plaintiff filed a "response to Defendant's reply" brief, otherwise known as a sur-reply. This court's local rules do not provide for the filing of a "sur-reply," and Plaintiff did not seek leave of the court to file one. Therefore, the court does not consider Plaintiff's filing at Docket Entry [25].

15

the microwave." *Id.*, ¶ 4. She then states because an employee's lunch break lasts between fifty and sixty minutes, it is her "belief" that the employee who had been in the break room the longest had been there for fifty to sixty minutes. *Id.*, ¶ 6.

Defendant moves to strike these three paragraphs of Plaintiff's second affidavit because they are speculative and are not based on personal knowledge. Plaintiff argues that her affidavit contains reasonable inferences and raises jury questions as to the employer's knowledge of the condition of the break room. Federal Rule of Civil Procedure 56(e) requires that statements in an affidavit be based on personal knowledge. *Id.* In *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002), the court found that this personal knowledge requirement "prevents statements in affidavits that are based, in part, upon information and belief – instead of only knowledge – from raising genuine issues of fact sufficient to defeat summary judgment." *Id.* at 1278. Therefore, where an affidavit states only that the affiant "believes" a "certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact." *Id.* at 1278-79.

Based on this precedent, the court agrees that paragraphs 3, 4, and 6 of Plaintiff's affidavit are not based on personal knowledge. Plaintiff did not see any of these employees enter the break room and cannot possibly know how long they were in the room. She has no knowledge, for example, of whether any of the employees ran an errand before coming to the break room and therefore ate their meals quickly. Her supposition that any one of the

16

employees had been there for fifty to sixty minutes is pure speculation. She cannot know whether any of their meals actually were heated in the microwave oven because she did not see them prepared. Finally, the court notes that Plaintiff was able to identify at least two of the four employees who were in the break room when she entered. *See* Second Aff., ¶ 2 (identifying two employees). For whatever reason, Plaintiff chose not to depose these witnesses or even gather a statement from them. She cannot replace their personal knowledge with her own suppositions, and the court cannot presume that at trial these individuals would testify as Plaintiff guesses they would. The court rejects any argument that Plaintiff's speculations are "reasonable factual inferences" that the jury could draw. *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1325-28 (11th Cir. 1982) (holding that an inference is unreasonable if a jury must engage in speculation and conjecture to such a degree as to render its finding "a guess or mere possibility"). The idea that one of the four employees Plaintiff saw in the break room had been there for at least fifty minutes is a pure "guess or mere possibility."

Under Georgia law of premises liability, the plaintiff must prove (1) "that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *See Robinson v. Kroger Co.*, 268 Ga. 735, 748 (1997); *see also Sudduth v. Young*, 260 Ga. App. 56 (2003) (applying standard in

17

employee context). "Constructive knowledge may be based either on evidence that the dangerous condition lasted so long that the defendant should have discovered it, or on evidence that an employee of defendant was in the immediate vicinity and could have easily seen the problem." *Collins v. East R.S., Inc.*, 228 Ga. App. 627, 627 (1997); *Herrin v. Peeches Neighborhood Grill & Bar, Inc.*, 235 Ga. App. 528, 531 (1998) (noting that plaintiff must show that defendant had "superior actual or constructive knowledge of the hazard").

Here, Plaintiff has proffered no evidence from which a jury could conclude that Defendant had actual notice of the clear liquid on the floor of the employee break room. Plaintiff, further, has proffered no evidence from which a jury could conclude that Defendant had constructive knowledge of the spill because she has no evidence as to how long the spill had been on the floor or that any of the employees in the break room could have seen the problem. Plaintiff has also failed to proffer any evidence from which a jury could conclude that Defendant should have discovered the slippery condition through the exercise of ordinary care. Defendant's representative testified that there had never before been reports of slippery spots in the break room that might put Defendant on notice that additional inspection or care was necessary. For these reasons, in the alternative, the court also GRANTS Defendant's second motion for summary judgment.

## III. Conclusion

18

The court GRANTS Defendant's first motion for summary judgment [16] and GRANTS Defendant's second motion for summary judgment [20].

The Clerk of Court is DIRECTED to DISMISS Plaintiff's complaint.

**IT IS SO ORDERED** this 11th day of February 2009.

                                        s/ J. Owen Forrester
                                        J. OWEN FORRESTER
                               SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)